## Emma Stevenson, Appellee, v. Avery Coal & Mining Company, Appellant.

1. EVIDENCE—*when expert testimony not erroneous, as invading province of jury.* In an action under the Mines and Miners Act charging wilful violation thereof, *held,* that it was competent for experts to testify that a particular shot was a practical and workmanlike shot.

2. EVIDENCE—*when admission of explanation of letter not errone-*

*ous. Held,* under the evidence, that it was within the discretion of the court to permit an attorney to explain a letter written by him which tended to show an attempt to corrupt a witness.

3. MINES AND MINERS ACT—*what not defense to action charging wilful violation.* In an action charging a wilful violation of the Mines and Miners Act, a recovery will not be defeated by the interposition either of the defense of assumed risk or that of fellow-servants.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Perry county; the Hon. B. R. BURROUGHS, Judge, presiding. Heard in this court at the October term, 1909. Affirmed. Opinion filed February 11, 1910.

B. W. POPE and PERCY WERNER, for appellant.

WEBB & WEBB and A. R. DRY, for appellee.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

This case has been heretofore in this court, where a judgment of $2,000 in favor of appellee was reversed and the cause remanded. Stevenson v. Avery Coal & Mining Co., 143 Ill. App. 397. When the case was reinstated on the docket of the trial court, it was consolidated with the case of Blanche Hougland et al. v. The Avery Coal & Mining Company, which grew out of the same facts and circumstances, and the two cases were tried together, resulting in a verdict and judgment in favor of the plaintiff in each case, for the sum of $3,000, from which judgment separate appeals have been taken to this court.

Upon this trial it was stipulated that either party might read from the bill of exceptions filed in this cause on a former appeal and both sides took advantage of the agreement and read from said bill of exceptions. Appellant re-examined a few of its former witnesses but neither side produced a new witness concerning the conditions existing in the mine prior or subsequent to the explosion.

This suit was brought for damages resulting to

plaintiff by reason of the death of her husband, William Stevenson, alleged to have been caused by the wilful failure of appellant to comply with certain provisions of the act in regard to Mines and Miners.

The case was tried upon the second, third and fourth counts of the declaration. The second count charged appellant with the wilful failure to comply with the requirements of the statute, that cross-cuts shall be made not more than sixty feet apart and no room opened in advance of the last open cross-cut, and alleged that by reason thereof great quantities of lamp and powder smoke, gases, mine dust and other deleterious air, accumulated and remained in certain rooms and that while said Stevenson, a shot-firer, was waiting in one of said rooms for the firing of a shot lighted in the face of an entry near by, said shot fired and communicated the fire to said lamp and powder smoke, gases, mine dust and other deleterious air, causing an explosion and thereby killing him.

The third count charged a wilful violation of the provisions of the statute requiring that when the air becomes charged with dust, the operator must have the roadways regularly and thoroughly sprayed, sprinkled or cleaned; and the fourth was substantially the same as the third, but charged only a failure to frequently and thoroughly sprinkle the hauling roads of the mine. When the case was here before, it was reversed and remanded because the court below refused to admit in evidence counts five, six and seven of the original declaration, withdrawn by appellee and afterwards offered in evidence by appellant; also because the court refused to admit in evidence a certain letter written by an attorney of appellee to a proposed witness. The causes now assigned for reversal of the judgment, are that there was no substantial evidence upon which to base the verdict; that the court erred in permitting certain expert witnesses to answer interrogatories which called for conclusions as to ultimate facts; in permitting the attorney who wrote the

letter above referred to, to explain what he intended thereby, and in giving appellee's instruction No. 8.

The facts as disclosed by the record are substantially as follows: At the time of the death of Stevenson, appellant was mining coal from the face of the first and second west entries off of the south entry and from rooms 1, 2 and 3 turned north off of said first west entry. As the first and second west entries were driven from the south entry, cross-cuts were made between them, the last cross-cut being 140 feet from the face of the first west entry and about thirty feet from the face of the second west entry. Fourteen feet west of this cross-cut, room No. 3 opened north off of the first west entry. From room 3 to the face of the entry was about 100 feet. At that time the course of the air current was west along the first west entry, then through the cross-cut into the second west entry, then east along that entry to the south entry. It did not go within 140 feet of the face of the first west entry and lacked fourteen feet of reaching the mouth of room No. 3. Coal cars from the second west entry passed over a track laid through said cross-cut to the first west entry and thence to the bottom of the shaft. A cross-cut had been started on the south side of the first west entry between the one above mentioned and the face, but was not near completion. On the afternoon of the day in question, Stevenson and William Hougland, who were shot-firers in appellant's mine and whose duty it was to fire shots in the two entries and three rooms above mentioned, went down to fire shots as usual. Subsequently a loud report was heard by those out in the vicinity of the top of the mine and volumes of smoke were seen ascending from the mouth of the shaft many feet in the air. When an entrance into the mine was effected, it was discovered that there had been a violent explosion. Props were blown down, tools and powder boxes blown open, powder cans blown to pieces, trap doors had been demolished and black damp and dangerous gases had be-

gun to accumulate. Stevenson and Hougland were both found dead, the body of the former being discovered in room three about forty feet from the door and that of the latter in the first west entry about ten feet east of the cross-cut between the entries. The hair and clothing of the men were not burned but the flesh about the face appeared to be parched and baked. It was discovered that a shot lighted in the stub cross-cut had not been fired, the fuse having gone out; that shots placed in the face of the first west entry and room 3 had exploded with the usual results, while one in the face of the second west entry had exploded and brought down about one-third of the cutting from the face and left the balance standing. This last shot had been prepared on that day by a miner named Heppe, who drilled and charged the hole and also made a cutting in the face of the entry. While he was preparing the shot Hougland examined the work, measured the hole, ascertained how much powder was going to be put in and approved the same.

The theory of appellant is that the hole was drilled a foot deeper than the cutting in the face of the entry, going into the "tight" or "solid" and the result was a "windy" or "blown out" shot; that thereby the force of the explosion came from the face out into the entry and not towards the cutting, causing large quantities of sparks and flames to be blown into the entry and cross-cut; that they directly ignited large quantities of powder which exploded and formed certain gases which destroyed the lives of the two men.

On the other hand appellee contends that the shot in question was a practical shot, and was drilled only a few inches deeper than the cutting in the face; that by reason of the opening of room 3 in advance of the cross-cut and air current and the failure to open cross-cuts every sixty feet and to keep the roadways sprayed, sprinkled and cleaned as provided by the statute, the air become charged with mine dust and gases; that this dust became ignited by the shot fired and a gen-

eral explosion followed; and that there was not sufficient powder in the mine to produce of itself the result claimed by appellant.

There was some controversy in the proofs, but it plainly appeared from a preponderance of the evidence, that appellant had wilfully violated the provisions of the Miners Act in every one of the particulars named in the above mentioned three counts of the declaration.

Attorneys for appellant press upon us their theory that the death of Stevenson was caused by gases following an explosion of powder, referring to conditions found to exist in the mine at the time and to well known rules of natural science, with a force which we are not disposed to ignore or underestimate. On the contrary the condition of the mine as to dust and gases was clearly shown to be bad and there was much proof to sustain the theory of appellee that the explosion occurred in the manner claimed by her. Under these conditions it was for the jury to say how the death of Stevenson was brought about, and we are not disposed to question the correctness of their solution of the problem.

Upon the trial six witnesses for appellee testified that the shot in question was a practical workmanlike shot and appellant complains that the interrogatories put to them were improper for the reason that they called for the conclusion of the witnesses as to the ultimate facts. These questions and the answers thereto appear to us to have been unobjectionable, but without going into the merits of that question, we are of opinion there could have been no substantial error in allowing these expert witnesses to state their opinions upon the subject named, for the reason that it was immaterial so far as plaintiff's right to recover was concerned whether the shots were prepared in a practical and workmanlike manner or not.

When this case was before us on the former occasion, we said in speaking of the claim of counsel for

appellant that the court erred in denying their motion to direct a verdict in its favor, "they base this contention upon three propositions: that a shot-firer employed under the Act of 1905 providing for 'shot-firers in coal mines,' does not come within the protection of the general mining act; that the deceased had violated 'the statute under which he was acting, thereby contributing directly to his own injury,' and that the violation of the statute charged in the declaration, was not the proximate cause of the injury and the death of deceased. We regard all three of these propositions as conclusively settled, against the contentions of appellant, by the very recent decision of our Supreme Court, in the case of Davis v. Ill. Collieries Co., 232 Ill. 284." In the case last mentioned (page 290) the following language is used: "It is also insisted that appellee fired the shots in an unskillful manner and by a method forbidden by the statute, and that his acts were the cause of the explosion. The evidence on his part indicates that even if this were true, the explosion so caused, was merely the explosion of gas resulting from the firing of one of the earlier shots; that the explosion of that gas could not have reached appellee at the place in the mine where he was injured, had the roadway been sprinkled or cleaned, and that the explosion reached him and became harmful to him because it was aggravated and made more destructive by the fact that the air in the roadway was charged with dust. Under these circumstances, appellee's negligence, if it existed, was merely contributory and would afford no defense under our statute in reference to Mines and Miners."

If the negligence of the shot-firer himself is no defense under the statute, it follows, as a matter of course, that the negligence of the miner who prepared the shot, even if proven would be no defense.

It is further insisted by appellant that the court erred in permitting the witness A. R. Dry, one of the attorneys for appellee, to testify as to his intention

with reference to the compensation offered a proposed witness in a letter written by him to said witness. On the former trial, the court below refused to admit this letter in evidence and when the case was before us, we said that the letter when properly identified, should have been admitted in evidence, as it tended to prove an attempt to corrupt the witness. On the last trial this letter was admitted in evidence and the writer was permitted to explain what he meant by the language used. This explanation might well have been excluded by the court, but as the witness to whom the letter was directed, was not called on behalf of appellee, but was called by appellant and testified for it upon several questions connected with the case, the explanation of the attorney was of no materiality in the case and was important only to him. Under these circumstances, we consider the admission of the explanation of the attorney a proper matter of discretion with the trial court.

It is finally insisted by appellant, that the court erred in giving instruction No. 8 on behalf of appellee, which was as follows:

"The court instructs the jury that although you may believe from the evidence, that the said Stevenson and Hougland, were each guilty of negligence in inspecting and firing the shot in the face of the second west entry, still that fact alone, if shown by the evidence to be a fact, is not sufficient in law to defeat the plaintiff's right to recover a verdict in their favor, provided you further believe from the evidence and instructions of the court, that the defendant was guilty of wilfully violating some provision of the statute, as charged in the plaintiff's declarations or in some one count thereof and that the death of said Stevenson and Hougland, directly and approximately resulted therefrom and that their death would not have resulted except from such wilful violation of the statute, if any is so shown by the evidence, as charged in the counts of the declaration before you as pleadings in the two cases."

The principal objection urged by appellant to this

instruction is that it tells the jury the negligence of Stevenson and Hougland would not prevent a recovery by them if the other conditions existed which entitled them to recover.

Appellant insists that as the statute in reference to shot-firers in mines provides that no shot-firer shall fire any shot which in his judgment, from an inspection thereof, shall not be a workmanlike, proper and practical shot, that if Stevenson neglected to inspect the shots and exercise his judgment, as to whether they had been properly prepared before firing them, and negligently fired a shot improperly prepared, he violated his statutory duty, and appellee could not recover in this suit. We do not think the position of appellant upon this question is well founded. That portion of the instruction which is criticised by appellant, as above, is in accord with the law as expressed in our former opinion in this case and in the case of Davis v. Ill. Collieries Co., *supra,* and there was no error in giving it.

The judgment of the trial court will be affirmed.

*Affirmed.*